## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEREMY HEATH BARNEY,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:17-1779** |
| **v.** | : | **(JUDGE MANNION)** |
| **PA DEP'T OF CORR,** *et al.*, | : | |
| **Defendants** | : | |

## MEMORANDUM

### I. BACKGROUND

Plaintiff, Jeremy Heath Barney, an inmate formerly confined in the Rockview State Correctional Institution ("SCI-Rockview"), Bellefonte, Pennsylvania, filed the above caption civil rights action pursuant to 42 U.S.C. §1983.[1] (Doc. 1). The named Defendants are the Pennsylvania Department of Corrections ("DOC"); John Wetzel, Secretary; Mrs. Kerri Moore, DOC Grievance Review Officer; and the following SCI-Rockview employees: Superintendent M.C. Garman; Unit Manager Mr. Knapp; Unit Manager C.E. Miller; Sergeant Watson, Sergeant Rogers; Sergeant Hazel; Sergeant Glass; and Corrections Officer Cummins. Id.

---

[1] Plaintiff is currently housed at the Forest State Correctional Institution ("SCI-Forest"), Marienville, Pennsylvania.

By Order dated February 8, 2018, Defendant, the Pennsylvania Department of Corrections, was dismissed as a Defendant, and the action was served on the remaining named Defendants. (Doc. 11). On April 18, 2018, Defendants filed an answer (Doc. 16) and on January 24, 2019, Defendants filed a motion for judgment on the pleadings. (Doc. 22). On March 18, 2019, Plaintiff filed a motion for leave to file an amended complaint. (Doc. 28). By Order dated March 27, 2019, Plaintiff's motion for leave to file an amended complaint was granted and Defendants' motion for judgment on the pleadings was dismissed as moot. (Doc. 30).

On April 15, 2019, Plaintiff filed his amended complaint. (Doc. 33). Plaintiff names all the same Defendants, except for Defendants, Sergeant Hazel and Grievance Review Officer Moor. Id. Thus, these Defendants were terminated as parties to the above captioned action on April 15, 2019.

Plaintiff's amended complaint and supporting exhibits allege that Defendants are all aware that "inmates and officers are still smoking on the blocks or just outside the door, when there is a non-smoking sign but they ignore it," thereby "forcing [Plaintiff] to continue to breath in toxic smoke" that "endangers [his] health." (Doc. 33, amended complaint). Plaintiff claims that Defendants are "forcing [him] to breath in toxic fumes from secondhand smoke", in violation of his "Eighth Amendment Right against cruel and

- 2 -

unusual punishment" and that Defendants are "negligent" in continuing to "allow and ignore smoking on the blocks." Id.

On May 10, 2017, Plaintiff filed Grievance No. 677414 concerning the smoke, which was responded to by Acting Major Lechner as follows:

> I have reviewed your grievance #677414 and began an investigation into your complaint. You report in your grievance you are writing up Unit Manager Knapp for retaliation. You state you spoke with Mr. Knapp and your Counselor Mr. Pownall about a security issue which you later identify as staff overlooking inmates smoking on the housing unit. You state you had written to the Governor and Secretary Wetzel concerning smoking on the block and in your cell. You claim SGT Glass told other inmates that you made the complaint about smoking on the unit and that they are mad at you and you were told to watch your back. Your further state that you requested to be moved off of CA unit and moved to CB unit and be given a single cell away from smoking. You state you were denied this by Mr. Knapp and that you informed him you would be writing Mr. Rowe at central office. You state Mr. Knapp claimed you were trying to blackmail him and that he stated he was going to write you up. You state this is retaliation and a refusal to do his job. You seek to have Mr. Knapp and SGT Glass removed from their positions as your relief.
>
> I have reviewed your grievance and discussed your allegations with Mr. Knapp and SGT Glass. SGT Glass denies that he told other inmates that you were the person solely responsible for stricter enforcement of non-smoking rules in the housing unit. Staff are cognizant of the non-smoking rule and do a good job at enforcing the rule as many staff do not want to be exposed to secondhand smoke as well. Mr. Knapp was interviewed and explained that you came to him and informed him of the above information concerning you being warned by other inmates to watch you back. He asked you if you wanted to take protective custody and you declined stating you wanted a Z code and moved to another housing unit or you were going to write the

- 3 -

> Governor explaining that ROC staff placed your well-being at risk.
>
> In conclusion, I have found no evidence staff are not enforcing the no smoking rules on the unit. In regard to your well-being placed at risk, you were offered protective custody and declined. Mr. Knapp did not feel comfortable placing you back on CA unit due to your claim that inmates told you to watch your back, so you were moved to a different housing unit. Your requested relief to have Mr. Knapp and SGT Glass removed from their positions is denied. This grievance has no merit and is denied at this time.

(Doc. 1 at 27, Initial Review Response).

On May 22, 2017, Plaintiff filed an appeal to Facility Manager, which was denied as follows:

> I have reviewed the initial grievance, the grievance officer rejection, and the subsequent appeal of your rejection relating to problems with staff.
>
> The response provided to you by Acting Major Lechner is detailed and shows that Major Leckner spent a considerable amount of time reviewing this complaint. It is obvious that you were moved to A Block after you refused an offer of protective custody. Upon further review, I am told you consistently complain about other inmates on the block and that the move occurred to separate you from C-Block. The response provided to you is accurate and I concur with Major Lechner's assessment.
>
> Your appeal is denied.

(Doc. 1 at 25, Facility Manager's Appeal Response).

Plaintiff appealed the denial to Final Review, which was denied on July 13, 2017, as follows:

You claim that Mr. Knapp is retaliating against you. You state that Mr. Knapp told Sgt. Glass that you had written to the Governor and Secretary Wetzel about the smoking on the block and in your cell. You allege that Sgt. Glass told other inmates about what you did and now there are inmates who are mad at you and have told you to watch your back. You say that you requested to be moved from CA to CB and in a single cell away from the smoking. You claim that Mr. Knapp refused your request even though he created a security issue by stating your name. You say that you told Mr. Knapp that you were writing to the Central Office and he now claims that you are trying to blackmail him, so he's going to write you up. You request to have Mr. Knapp and Sgt. Glass removed from their positions.

A review of the record found that Mr. Knapp and Sgt. Glass were interviewed about your allegations. Sgt. Glass denied telling other inmates that you complained about smoking on the block and in your cell. Mr. Knapp stated that he asked if you wanted to be placed in protective custody and you declined his offer. You were moved to a different housing unit because of your claims that you were told to watch your back. There is no evidence of retaliation by staff. Your grievance and requested relief are denied.

(Doc. 1 at 23, Final Appeal Decision).

In addition to filing a grievance concerning Plaintiff's alleged exposure to secondhand smoke, Plaintiff also wrote to Governor's Office and to Secretary Wetzel, who responded with the following:

This serves as response to your two correspondences addressed to the Governor's Office and Secretary Wetzel regarding staff not enforcing the smoking law. Additionally, you indicated fearing retaliation for filing a grievance. Your correspondence has been referred to me for review and response.

> Mr. Barney, per DOC policy 1.1.7 Clean Indoor Air Act Procedures Manual smoking is prohibited in departmental buildings which is also reinforced in the page 35 of the Inmate Handbook 2017 Edition. Smoking, with exception of tobacco free facilities, is only permitted at designated outdoor locations. If you are of individuals violating this policy, you are encouraged to inform your facility staff so they can address the violation. By copy of this response SCI-Rockview's Administration and your unit team are being made aware of your concerns. Lastly, the DC ADM 804 Inmate Grievance Policy specifically prohibits retaliation against inmates that utilize the grievance system.
>
> I trust that your concerns have been adequately addressed.

(Doc. 1 at 30, May 1, 2017 Correspondence).

On June 28, 2017, Plaintiff filed Grievance No. 684561, claiming Unit Manager and Sergeant Hazel retaliated against him by suspending his job. (Doc. 1 at 42, Official Inmate Grievance).

By response dated July 13, 2017, Plaintiff's grievance was denied as follows:

> You are grieving UM Miller and Sgt. Hazel for retaliation by suspending your job. You allege you did not fail to report to work. You claim Sgt. Hazel said you were fired on 6-7-17, so how could you fail to report to work and then be job suspended two weeks later. You also ask for $1000.00 in retaliatory compensation due to violations of DOC policy and US Constitutional laws. You aver Sgt. Hazel and UM Miller should be removed from their positions of authority.
>
> Inmate Bailey, upon investigation of records, I found you were employed on C Unit as a Blockworker before you went to the Restrict Housing Unit on May 12, 2017. You were released to A Unit and added to the Blockworker roster on 5-20-17. Although you went to TBI, you were returned again to A Unit as a

Blockworker on 6-8-17. There is a daily job change report that would reflect these changes and updates. Upon speaking to UM Miller and Sgt. Hazel, I was informed that you were informed the only job at the time was cleaning the stairs and you said you could not perform those tasks because you could not walk up and down the stairs. (Please note that your medical restriction clearly says LOWER 3 TIERS recommended). Sgt. Hazel then said if you wouldn't take the job you couldn't be a Blockworker and you replied that you did not care. Sgt. Hazel may have told you that you were fired on 6-7-17, however it took time for the process of job suspension to catch up with you. CEVC Miller listed you as job suspended effective 6-21-17. No policies or laws were violated.

Your grievance is denied based on these facts. Staff reported that you did not show up to work and although your medical status would have permitted you to work, you chose not to work. Your job will not be reinstated, you will not be moved to C Unit and you will not receive monetary compensation. UM Miller and Sgt. Hazel will retain their positions. I recommend you find a more positive and amicable way to deal with staff and your issues on the unit.

(Doc. 1 at 41, Initial Review Response).

Plaintiff filed an appeal of the grievance denial to the Facility Manager, who denied Plaintiff's appeal on August 1, 2017, finding the following:

I have reviewed the initial grievance, the grievance officer response, and the subsequent appeal of your issues relating to your job suspension from your blockworker position.

Major Haldeman is correct in her review of your complaint. According to DC ADM 816, you were suspended from your job and notice was given in a timely manner. This refusal could have and should have resulted in a DC 141 misconduct infraction. Your appeal has no basis and is denied.

(Doc. 1 at 39, Facility Manager's Appeal Response).

Plaintiff's appeal to Final Review (Doc. 1 at 38) was denied on August

17, 2017 as follows:

> You claim that on 6/7/17 when you were released from the
> infirmary back to A block, Sgt. Wagner put you into cell 3026.
> You say that you approached Mr. Miller and Sgt. Hazel and
> informed them that you were to be ground level and bottom bunk
> status, but they refused to confirm this with medical. You claim
> that when you asked for a grievance, Sgt. Hazel said that you
> were fired from your block worker job. You say that he never
> reassigned you to another job. You request to be moved from A
> block to C block due to retaliation. You request to be reinstated
> to your block worker job and to be paid for the money that you
> were denied. You request $1,000.00 for the retaliation, policy
> violation, and constitutional amendment rights violation. You also
> request that Mr. Miller and Sgt. Hazel are removed from their
> jobs.
>
> A review of the record found that the Grievance Officer provided
> you with a detailed response to your allegations. You refused to
> do your assigned job; therefore, you were removed from the job.
> The record shows that currently you are a block worker on C unit.
> There is no evidence of retaliation. You fail to provide any
> evidence to substantiate your claims. Your grievance and
> requested relief are denied.

(Doc. 1 at 37, Final Appeal Decision).

On October 2, 2017, Plaintiff filed the instant action in which he seeks

compensatory and punitive damages for Defendants' retaliation and

"negligent action" of "forcing [Plaintiff] to breath in toxic fumes from

secondhand smoke that threatens [Plaintiff's] life and well-being." (Doc. 33

at 7). He also seeks Defendants to "pay all future medical expenses for

[Plaintiff], where secondhand smoke has and can cause cancer and any other medical illnesses associated with secondhand smoke." Id.

Presently before the Court is Defendant's motion to dismiss Plaintiff's amended complaint. (Doc. 35). The motion is fully briefed and, for the reasons that follow, the Court will grant Defendant's motion to dismiss.

## II. MOTION TO DISMISS

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft

v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (*per curiam*).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief"." Id. at 211 (quoted case omitted).

## III. Discussion

### A. Personal Involvement

In a 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law

or the Constitution of the United States. Parratt v. Taylor, 451 U.S. 527 (1981); Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. See, e.g., Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 1546 F.2d 1077, 1082 (3d Cir. 1976); Parratt, supra. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a §1983 case and that a complaint must allege such personal involvement. Id. Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. Id. As the Court stated in Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs.... [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. Id. Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to liability. See Rode, 845 F.2d at 1208.

Initially, we find that Plaintiff's Eighth Amendment claims against Defendants Wetzel, and Garman, should be dismissed because these Defendants are not alleged to have sufficient personal involvement in the alleged wrongdoing. As stated above, liability cannot be predicated in a §1983 action solely on the operation of *respondeat superior*. Evancho v. Fisher, 423 F.3d 347, 353 (3d. Cir. 2005). For the Plaintiff's claim to proceed successfully in the instant case, therefore, Plaintiff would have to establish each Defendant acted with a culpable state of mind to subject Plaintiff to cruel and unusual punishment, not merely that they knew he was being exposed to ETS, i.e., negligence. See Caldwell v. Luzerne County Corrections Facility Management Employees, 732 F.Supp.2d 458, 472 (M.D. Pa. 2010). Also, each named defendant must be shown, through the Amended Complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. We find that there is no indication that Defendants Wetzel, and Garman, outside of their supervisory role, ever had this required level of sufficient personal interaction

with the Plaintiff. Id.; Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998). Plaintiff's own exhibits demonstrate this. While, there is arguably notice by Plaintiff writing to Secretary Wetzel, there are no facts pled which would conceivably be considered acquiescence, as required by the cases cited above. The Secretary did all he is expected to do as the head of the DOC, by referencing the policies in place to prevent smoking. By no means did he signal agreement in illegal acts. This same analysis applies to Superintendent Garman. Outside of his handling of Plaintiff's grievances, Garman's involvement fails to meet the required level of sufficient personal interaction with the Plaintiff. Id. at 1207. See also, Mitchell v. Dodrill, 696 F.Supp.2d 454, 469 (M.D. Pa. 2010) (holding that officials' handling of prison grievance procedures does not equate to personal liability in a civil rights claim). Based upon an application of the above standards, Plaintiff has failed to satisfy the personal involvement requirement standard of Rode with respect to Defendants Wetzel and Garman, and they shall be dismissed.

## B. Retaliation

The First Amendment offers protection for a wide variety of expressive activities. See U.S. Const. amend I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. See

Turner v. Safley, 482 U.S. 78, 89 (1987). Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. See Allah v. Seiverling, 229 F.3d 220, 224–25 (3d Cir. 2000). To prevail on a retaliation claim under 42 U.S.C. §1983, plaintiff must demonstrate (1) that he was engaged in protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225).

Examples of adverse actions that have, in certain cases, been found to support a retaliation claim include filing false misconduct reports, Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), transferring a prisoner to another prison, Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001), and placing a prisoner in administrative custody, Allah, 229 F.3d at 225.

The third essential element to a retaliation claim is that there be a causal link between the exercise of a constitutional right and the adverse action taken against the prisoner. Rauser, 241 F.3d at 333-34. To establish this third, and crucial, component to a constitutional retaliation claim, causation, Plaintiff must make an exacting showing. In this setting:

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to

- 14 -

establish a causal link. <u>See</u> Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997). In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation. <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d271, 281 (3d Cir. 2000).

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Finally, if a plaintiff discharges his obligation to satisfy this three-part prima facie test, the burden then shifts to the defendant to prove by a preponderance of the evidence that he or she would have made the same decision absent the protected conduct for reasons reasonably related to penological interest. Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002). "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.

Barney believes that Defendant Knapp transferred him to another unit in retaliation for filing a grievance regarding smoking on his current unit. (Doc. 33). Such allegation, however, is negated by Plaintiff's own exhibit, which demonstrates that Plaintiff requested to be transferred as a result of

the smoking on his unit. (See Doc. 1 at 27). Plaintiff was offered protective custody but "declined, stating [he] wanted a Z code and moved to another housing unit." Id. Plaintiff was then "moved to another housing unit." Id. Thus, Plaintiff's allegations fail, as his own exhibit shows that in response to his grievance, he was accommodated by being moved into another cell on a different unit.

Plaintiff's next claim of retaliation is that "after [Plaintiff] filed a grievance against Mr. Miller concerning the smoking problem, Mr. Miller retaliated against [Plaintiff] by job suspending him and not having a meeting between [Plaintiff] and Mr. Miller and his staff to resolve the issue." (Doc. 33 at 5). Once again, Plaintiff's allegations are belied by his own exhibits. Plaintiff's grievance and grievance appeals regarding his job reveal that Plaintiff "refused to do [his] assigned job" and was therefore "removed from the job." (See Doc. 1 at 37-42). Additionally, Plaintiff's grievance about smoking on the block was filed on May 10, 2017. (Doc. 1 at 28). Plaintiff was not suspended from his job until June 21, 2017. (Doc. 1 at 41). Thus, Plaintiff fails to demonstrate the temporal proximity between the protected activity and the alleged retaliatory act, as well as the timing to establish a causal link. See Rauser, 241 F.3d at 333-34. Consequently, his retaliation claim fails.

Finally, with respect to Plaintiff's claim that Defendants "threaten[ed] or allow[ed] threats upon [his] well-being", (Doc. 33 at 7), in order to demonstrate an "adverse action," which is an element of a successful retaliation claim, a prisoner must show that "the action 'was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights.' "). Rauser, 241 F.3d at 333. However, verbal threats cannot, as a matter of law, constitute a retaliatory action given that verbal threats cannot as a matter of law deter a prisoner of ordinary firmness from engaging in protected activities. See Gaut v. Sunn, 810 F.2d 923 (9th Cir. 1987)(wherein the court noted that "Gaut also alleged he was 'threatened with bodily harm' by the defendants 'to convince him to refrain from pursuing legal redress' for the beatings. This allegation fails to state a cause of action under section 1983.... The fact that the complaint alleges the threat to be for the purpose of denying Gaut access to the courts does not compel a contrary result.")). This Court agrees that the verbal threat which Defendants allegedly made in retaliation for Plaintiff's filing of grievances simply is not sufficient to state a First Amendment retaliation claim. See, e.g., Washington v. Webster, 883 F.2d 76 (Table), 1989 WL 91653, at *1 (6th Cir. 1989)("The threat to do harm in order to interfere with plaintiff's constitutional rights does not in itself give rise to a constitutional violation."); Rustan v. Rasmussen, 208 F.3d 218 (Table),

2000 WL 227987, at *2 (8th Cir. 2000) (no First Amendment retaliation claim where inmate alleged correctional officers harassed and verbally threatened him in retaliation for his grievance and petition against one of the officers; the court holding that the prisoner's claim of officers verbally threatening him "cannot form the basis of a cognizable section 1983 claim"); Bartelli v. Lewis, NO. CIV.A. 3:CV-04-0908, 2005 WL 2406048, *2 (M.D. Pa. Sept. 29, 2005)("we determine that verbal threats do not constitute an 'adverse action' and, therefore, do not fulfill a requisite element of a retaliation claim"). Thus, Plaintiff's allegations regarding verbal threats are without merit.

### C. Eighth Amendment Claim

Plaintiff invokes the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. The Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety'." Helling v. McKinney, 509 U.S. 25, 33 (1993) (quoting DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200 (1989)). "Liability based on exposure to ETS requires proof of (1) exposure to unreasonably high levels of ETS contrary to contemporary standards of decency; and (2) deliberate indifference by the authorities to the exposure to ETS." [Demetrius] Brown v. U.S. Justice Dep't, 271 F. App'x 142, 144 (3d Cir. 2008) (citing Helling, 509 U.S. at 35). The Supreme Court

has observed that the adoption by a prison of an anti-smoking policy "will bear heavily on the inquiry into deliberate indifference." Helling, 509 U.S. at 36.

The United States Court of Appeals for the Third Circuit has explained that ETS claims come in two varieties, present injury, and future injury. With respect to future injury, Helling sets forth the following two-part inquiry for ETS claims:

> The Court explained that the first prong of the Helling test is an objective one: "[The prisoner] must show that he himself is being exposed to unreasonably high levels of ETS." Id. at 35, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22. With respect to the objective factor, the Court noted that beyond a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS, the Eighth Amendment requires "a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." Id. at 36, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (emphasis in original). The Court stated: "In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." Id.

> The second prong of the Helling test is a subjective one: whether prison officials were deliberately indifferent to a serious risk of harm. Id. at 36, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22. The Supreme Court has held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

Atkinson v. Taylor, 316 F.3d 257, 262 (3d Cir. 2003). A present injury claim based on exposure to ETS requires proof of: 1) a sufficiently serious medical need related to ETS exposure; and 2) deliberate indifference by the prison authorities to that need. Id. at 266 (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

Thus, both present and future injury claims require an objective component, either that the prisoner be subjected to an unreasonably high level of ETS or that the prisoner suffer from a sufficiently serious medical need; and both require as a subjective component that the prison authorities be deliberately indifferent. Defendants argue that Plaintiffs cannot satisfy either prong. The Court agrees.

Initially, the Court notes that Plaintiff has failed to demonstrate that he suffers from any type of medical need or illness related to ETS exposure. Nor does Plaintiff demonstrate that he ever sought medical treatment due to ETS exposure. Thus, Plaintiff fails to meet the objective element of either a present or future injury claim, as he has failed to link any symptom to ETS exposure. See Abhouran v. United States, 389 F. App'x 179, 183–84 (3d Cir. 2010) (prisoner presented no evidence that smoke came through ventilation system); Goode v. Nash, 2007 WL 201007 (M.D. Pa. Jan.23, 2007) (despite

opportunity to develop a record, the plaintiff relied on only his only speculations that ETS exposure resulted in his nasal discomfort, coughing and other maladies), aff'd, 241 F. App'x 868 (3d Cir. 2007); [Abdul] Brown v. Varner, 2013 WL 4591817, at *18–19 (M.D. Pa. Aug.28, 2013) (when prisoner filed grievances of ETS but did not have any injuries and was informed that the prison had a no-smoking policy that was enforced, his claims failed); Keyes v. Chamberlin, 2011 WL 113445, at *5 (W.D. Pa. Jan.13, 2011) (Lenihan, M.J.) (when prisoner claimed ETS exposure at SCI–Graterford but prison proffered evidence of a no-smoking policy that was enforced, his claims failed); Belland v. Matachiski, 2009 WL 1585811, at *5–6 (M.D. Pa. June 3, 2009) (inmate with asthma failed to show that he was injured by ETS or that he was exposed to it at a level that society is unwilling to accept); Buchanan v. United States, 2007 WL 983312, at *8 (M.D. Pa. Mar 27, 2007) (no evidence other than prisoner's own speculation that ETS exposure caused his eye irritation, nausea, headaches and breathing problems); Meo v. Wall, 2003 WL 22358649, at *3–4 (D.R.I. Sep.11, 2003) (plaintiffs failed to demonstrate that the ETS that they were exposed to caused them to suffer "serious" current health problems where they had no reported medical condition which could have been aggravated by ETS, but rather shortness of breath, wheezing, tearing of eyes and pains in the chest).

Additionally, Plaintiff has failed to prove that prison officials were deliberately indifferent to a serious risk of harm. Plaintiff acknowledges that the DOC has a policy prohibiting smoking inside its buildings. (See Doc. 39). Plaintiff was advised SCI-Rockview is a non-smoking facility, which reprimands or disciplines inmates who smoke in their cell, when their identity is disclosed. (See Doc. 1 at 30). Moreover, Plaintiff's own exhibits demonstrate that when Plaintiff did complain about being exposed to smoke, he was moved. Thus, given the responsiveness displayed by prison officials and their adherence to the DOC no-smoking policy, Plaintiff's ETS claim fails. See Slaughter v. Rogers, 408 Fed. Appx. 510 (3d Cir. 2010) (finding that evidence of a smoking policy, citations for violations of the policy and acknowledging receipt and consideration of Slaughter's complaints sufficient to meet Helling two-part inquiry); Panton v. Nash, 317 Fed. Appx. 257 (3d Cir. 2009) (holding that a prison official cannot be deliberately indifferent to a serious medical need if there is insufficient documentation to put the official on notice of that need); Brown v. Varner, No. 3:11-cv-1258, 2013 WL 4591817, at *15 (M.D. Pa. Aug. 28, 2013) (finding Defendants entitled to summary judgment in an ETS case for three reasons: First, Brown does not identify any personally culpable defendants. Second, Brown does not present proof of any present injury as a result of ETS exposure. Third, Brown

does not show deliberate indifference to his needs given the responsiveness displayed by prison officials, and their adherence to the Department of Corrections no-smoking policies).

## IV. **Preliminary Injunction**

An injunction is an "extraordinary remedy" that is never awarded as of right. Winter v. Natural Resources Defense Council, 555 U.S. 7 (2008).

The United States Court of Appeals for the Third Circuit has delineated four (4) factors that a district court must consider when ruling on a motion for a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured if the court denies the requested relief; (3) whether granting the requested relief will result in even greater harm to the nonmoving party; and (4) whether granting the relief will be in the public interest. See Gerardi v. Pellulo, 16 F.3d 1363, 1373 (3d Cir. 1994); Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 1970–98 (3d Cir. 1990). These same factors are used in considering a motion for temporary restraining order. Bieros v. Nicola, 857 F.Supp. 445, 446 (E.D. Pa. 1994). The moving party has the burden of satisfying these factors. Adams v. Freedom Forge Corp., 204 F.3d 475, 486 (3d Cir. 2000). While each factor need not be

established beyond a reasonable doubt, they must combine to show the immediate necessity of injunctive relief. Stilp v. Contino, 629 F.Supp.2d 449, 457 (M.D. Pa. 2009) (citing Swartzwelder v. McNeilly, 297 F.3d 228, 234 (3d Cir. 2002) ). In addition, "[a]s these elements suggest, there must be a 'relationship between the injury claimed in the party's motion and the conduct asserted in the complaint'." Ball v. Famiglio, 396 Fed. App'x 836, 837 (3d Cir. 2010) (quoting Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) ).

Moreover, the power of a court to issue injunctive relief is also limited and circumscribed by the mootness doctrine. The mootness doctrine recognizes a fundamental truth in litigation: "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698–99 (3d Cir. 1996).

In the instant case, Barney seeks injunctive relief against the Defendants, all employees of SCI-Rockview, "as they are informing inmates that the Plaintiff in this matter is the reason why the DOC is going tobacco free." (Doc. 31). However, Barney is no longer confined at SCI–Rockview. Subsequent to the filing of the above captioned action, Plaintiff was transferred to SCI-Forest, where he is currently confined.

The Third Circuit Court of Appeals has observed that, when addressing inmate requests for injunctive relief:

> As a preliminary matter, we must determine whether the inmates' claims are moot because "a federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." Preiser v. Newkirk, 422 U.S. 395, 401 (1975) (quotations omitted); see also, Abdul–Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993). An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims. Abdul–Akbar, 4 F.3d at 197 (former inmate's claim that the prison library's legal resources were constitutionally inadequate was moot because plaintiff was released five months before trial.)

Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003). This Court has previously held, in a case such as the present, where an inmate seeks injunctive relief against his jailers but is no longer housed at the prison where those injunctive claims arose, his transfer to another institution moots any claims for injunctive or declaratory relief. Fortes v. Harding, 19 F.Supp.2d 323, 326 (M.D. Pa. 1998). For these reasons, Plaintiff's pending motion for a gag order and permanent injunctive relief must be denied as moot since he is no longer confined at SCI–Rockview, and there is no indication that he will be housed at that facility in the foreseeable future.

- 25 -

## V. LEAVE TO AMEND

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

Here, it is clear from the facts alleged in the *pro se* amended complaint that any attempt to file a second amend complaint against the named Defendant would be futile. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Thus, the Court will dismiss the Plaintiff's §1983 claims without leave to amend to file a second amended complaint.

## VI. CONCLUSION

For the reasons set forth above, the Court will grant Defendants' motion to dismiss. Plaintiff's motion for injunctive relief will be dismissed as moot, as well as Plaintiff's remaining outstanding motions.

A separate Order shall issue.

s/ Malachy E. Mannion
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 2, 2021**
17-1779-01

- 26 -